# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: Case No. A04-00716-DMD<br><br>BEN A. THOMAS, INC.,<br><br>      Debtor. | Chapter 7 |
| RITCHIE BROS. AUCTIONEERS (AMERICA), INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>WASSER & WINTERS COMPANY, BEN A. THOMAS, INC., HONGKONG AND SHANGHAI BANKING CORPORATION, KEY BANK NATIONAL ASSOCIATION, UNITED STATES OF AMERICA, ALASKA FOREST ASSOCIATION, INC., ALASKA LOGGERS ASSOCIATION RETIREMENT PLAN AND TRUST, TRUSTEES OF THE TONGASS TIMBER TRUST,<br><br>      Defendants, | Adversary No. A04-90040-DMD<br><br>**Filed On**<br>**5/6/05** |

ALASKA LOGGERS ASSOCIATION RETIREMENT PLAN AND TRUST, TRUSTEES OF THE TONGASS TIMBER TRUST,

   Counter-claimants,

 v.

RITCHIE BROS. AUCTIONEERS (AMERICA), INC.,

   Counter-defendant,

ALASKA LOGGERS ASSOCIATION RETIREMENT PLAN AND TRUST, TRUSTEES OF THE TONGASS TIMBER TRUST,

   Cross-claimants,

 v.

BEN A. THOMAS, INC., HONGKONG AND SHANGHAI BANKING CORPORATION, KEY BANK NATIONAL ASSOCIATION, UNITED STATES OF AMERICA, WASSER & WINTERS COMPANY,

   Cross-Defendants,

KEY BANK NATIONAL ASSOCIATION,

   Counter-claimant,

 v.

ALASKA LOGGERS ASSOCIATION RETIREMENT PLAN AND TRUST, TRUSTEES OF THE TONGASS TIMBER TRUST,

   Counter-defendants.

**MEMORANDUM REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Ritchie Bros. has interpled $607,046.77 in sales proceeds arising from the auction of the debtor's logging equipment into the registry of this court. This interpleader action is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Jurisdiction arises in accordance with 28 U.S.C. § 1334(b) and the district court's order of reference.

The parties have filed cross-motions for partial summary judgment. The issue to be determined is whether the Trustees of the Tongass Timber Trust and the Alaska Loggers Association Retirement Plan and Trust (hereinafter, "the Trusts") may claim a lien for unpaid fringe benefit contributions pursuant to Alaska's wage lien statute, AS 34.35.435. The Trusts contend they fall within the scope of this statute and that their lien therefore primes the prior recorded security interests of Wasser & Winters and Key Bank. I disagree and find in favor of Wasser & Winters and Key Bank.

<u>Background</u>

The debtor, Ben A. Thomas, Inc., owes the Trusts more than $526,874.00 in unpaid fringe benefit contributions. This liability arose between April, 2002, and December of 2003 in conjunction with timber harvesting operations the debtor performed on land owned by Afognak Native Corporation in the Kodiak Recording District. In the latter part of 2003 and early months of 2004, after the debtor failed to timely pay the benefit contributions, the Trusts recorded claims of timber liens in the Kodiak Recording District. The Trusts also

3

recorded employee benefit liens under AS 23.10.047 and wage liens under AS 34.35.435. In January, 2004, the Trusts initiated a civil action under ERISA, 29 U.S.C. § 1132(d)(1), against the debtor in the United States District Court, to collect the delinquent fringe benefit contributions. In April, 2004, the Trusts filed a second civil suit in Kodiak Superior Court, against the debtor, Afognak Native Corporation, and certain surety bonds to foreclose the timber, wage and benefit liens and to recover against the debtor's surety bonds. The Trusts were two of the petitioning creditors who filed an involuntary chapter 11 petition against the debtor in July, 2004. The involuntary petition was not contested by the debtor, and an order for relief was entered August 18, 2004. The case subsequently converted to chapter 7.

Before the involuntary petition was filed, in April of 2004, the bulk of the debtor's logging equipment was auctioned by Ritchie Bros. Auctioneers in Olympia, Washington. Richie has interpled the net sales proceeds from the auction, $607,046.77, into the court registry. Wasser & Winters held a security interest in some of the items sold at auction, and claims it is entitled to more than $334,000.00 of the proceeds. Key Bank also held a security interest in some of the equipment, and claims it is entitled to $115,075.09 of the proceeds. The Trusts contend they hold a lien under AS 34.35.435 which primes the interests of Wasser & Winters and Key Bank in the auction proceeds.

Discussion

4

The Trusts claim a lien against the debtor's assets and, thus, the auction proceeds from the sale of the debtor's equipment, under two Alaska statutes. The first one, AS 34.35.435, is entitled "Lien for wages," and provides:

> When a clerk, accountant, bookkeeper, waiter, waitress, cook, maid, porter, servant, employee, artisan, craftsman, factory operator, mill operator, mechanic, quarryman, common laborer, or farmhand labors or performs a service in an office, store, hotel, rooming house, boardinghouse, restaurant, café, shop, newspaper plant, factory, quarry, or mill, of any character, or upon a farm, under or by virtue of a contract or agreement, written or oral, with a person or employer, or an agent, receiver, or trustee of the person or employer, in order to secure the payment of the amount due or owing under the contract or agreement, written or oral, the employee has a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, wagons, carts, or things of value, of whatsoever character, that are created in whole or in part by the labor or that may be used or useful by the person or may be necessarily connected with the performance of the labor or service, which may be owned by the employer, or an agent, receiver, or trustee of the employer.[1]

This statute was enacted in 1949.

The second lien statute relied on by the Trusts, AS 23.10.047, is entitled "Employee's lien." This statute was enacted in 1962. It provides, in part,

> (a) If an employer agrees with an employee or group of employees to make payment to a medical, health, hospital, welfare, or pension

---

[1] AS 34.35.435 (§ 1 ch 79 SLA 1949).

5

>fund or such other fund for the benefit of the employees, or has entered into a collective bargaining agreement providing for the payments, but fails to make the payments when due, a lien is created in favor of each affected employee on the earnings of the employer and on all property of the employer used in the operation of the employer's business to the extent of the money, plus penalties due to be paid on the employee's behalf to qualify the employee for participation in the fund and for expenses incurred by the employee for which the employee would have been entitled to reimbursement under the fund if the required payments had been made.
>
>. . . .
>
>(e) The lien created under (a) of this section is preferred and superior to an encumbrance that attaches after the employer's payments became due, and is also preferred and superior to an encumbrance that has attached previously, but that was not recorded and of which the lien claimant had no notice.[2]

The first lien statute, AS 34.35.435, allows employees and laborers in almost any capacity to acquire a first lien for unpaid wages upon property of their employer. The second statute, AS 23.10.047, authorizes a lien upon the same class of property, e.g., an employer's property, for unpaid benefit contributions. Unlike the wage lien statute, however, the lien permitted under AS 23.10.047 is subordinate to prior recorded interests in the employer's property.

---

[2] AS 23.10.047 (§ 43-2-14 ACLA 1949; added by § 1 ch 145 SLA 1962).

6

Wasser & Winters argues, as a matter of general statutory construction, that the more specific provisions of AS 23.10.047 govern the creation and priority of the Trusts' liens rather than the more favorable provisions of AS 34.35.435. As such, the Trusts' liens would be relegated to a third position, behind the prior recorded security interests of Wasser & Winters and Key Bank, on the auction sale proceeds. The Trusts, on the other hand, contend that there is no need to apply rules of statutory construction because each statute gives rise to a separate remedy. Under their theory, the Trusts are entitled to claim liens against the debtor's property and, thus, the auction proceeds, under both AS 34.35.435 and AS 23.10.047, and their lien under the former statute would prime the interests of Key Bank and Wasser & Winters. I agree with Wasser & Winters, although I reach my conclusion via a different route.

State law controls the validity and effect of state statutory liens in bankruptcy.[3] Alaska's Uniform Commercial Code does not apply to statutory liens.[4] And, while the remedial provisions of the Alaska lien statutes are to be liberally construed,[5] Alaska courts have long held that the provisions which give rise to the creation of the lien itself must be

---

[3] *Diament v. Kasparian (In re Southern California Plastics, Inc.)*, 165 F.3d 1243, 1247 (9th Cir. 1999).

[4] A.S. 45.29.109.

[5] AS 34.35.930.

7

strictly construed.[6]  In *H.A.M.S. Co. v. Electrical Contractors of Alaska, Inc.*,[7] the Alaska Supreme Court stated:

> [T]here is a significant distinction between those portions of Alaska mechanics' liens statutes which are remedial in nature, and those portions which articulate mandatory conditions precedent to the very creation and existence of the lien.  It is the latter aspect of Alaska's mechanics and materialmen's lien statutory provisions which is at issue in this case.
>
> A case interpreting an Oregon statute, which is the basis for the Alaska mechanics' lien statute, points out:
>
>> It is well established in this state that because the right to a lien is purely statutory, a claimant to such a lien must in the first instance bring himself clearly within the terms of such law.  The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien. . . . However, when the claimant's right to a lien has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment.[8]

---

[6] *See, e.g., Nerox Power Sys. v. M-B Contracting Co., Inc.*, 54 P.3d 791, 800-801 (Alaska 2002); *Sullens & Hoss v. Farvour*, 117 F.Supp. 535, 538 (D. Alaska 1954) [mechanic's and materialman's liens]; *Johnson v. Halls*, 7 Alaska 638, 639-40 (D. Alaska 1927); *In re Craig Lumber Co.*, 6 Alaska 356, 360 (D. Alaska 1921) [logger's lien].

[7] 563 P.2d 258 (Alaska 1977).

[8] *H.A.M.S. Co.*, 563 P.2d at 262-63, *citing Anderson v. Chambliss*, 199 Or. 400, 262 P.2d 298, 300 (Or. 1953).

8

Liens for wages or for benefit contributions are purely statutory creations, subject to the same limitations as mechanic's or logger's liens. On its face, AS 34.35.435 grants a lien for wages to individual employees and laborers. Clerks, accountants, bookkeepers, and other workers may assert wage liens against property of their employers or the "agent, receiver, or trustee" of the employer. The Trusts are not included within the class of claimants entitled to assert the wage lien, while they clearly fall within the scope of AS 23.10.047.

The Trusts argue that the rule of statutory construction favoring specific over general statutes to determine which one governs doesn't apply here. They rely on *Alaska Dept. of Highways v. Green*[9] to support their position. *Green* is distinguishable on its facts and the court's analysis does not advance the Trusts' position. The court in *Green* explained that "the rule of construction favoring specific over general provisions need not be invoked unless it is impossible to give effect to both provisions."[10] The court indicated that, where possible, the two statutes should be harmonized, but if there was conflict between the two, the more specific statute would prevail "regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling."[11]

The Trusts say there is no conflict between AS. 34.35.435 and AS 23.10.047 and that they are entitled to claim liens under both provisions. I disagree. Their interpretation creates a conflict because, rather than harmonizing the two statutes, it nullifies the more

---

[9] 586 P.2d 595 (Alaska 1978).

[10] *Id.* at 602.

[11] *Id., citing* 2A C. Sands, SUTHERLAND STATUTORY CONSTRUCTION § 51.05, at 315 (4th ed. 1973).

9

specific statute granting a lien for delinquent fringe benefit contributions. This flies in the face of another basic principle of statutory construction which "militate[s] against interpreting a statute in a manner that renders other provisions meaningless."[12]

The Alaska Supreme Court recently summarized its approach to statutory interpretation as follows:

> In construing the meaning of a statute, we look to the meaning of the language, the legislative history, and the purpose of the statute in question. "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others." "Because this is a case of first impression in this state, '[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'"
>
> . . . .
>
> We have rejected a mechanical application of the plain meaning rule in matters of statutory interpretation, and have adopted a sliding scale approach instead. The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be. In assessing statutory language, "unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[13]

---

[12]*Rollins v. Alaska Dept. of Revenue*, 991 P.2d 202, 208 (Alaska 1999), *citing M.R.S. v. State*, 897 P.2d 63, 66 (Alaska 1999).

[13]*Gov't Empl. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 285 (Alaska 2005) [citations omitted].

10

The legislative intent is clear in AS 23.10.047. The statute permits a lien against an employer's property for unpaid employee fringe benefit contributions which is subordinate to prior recorded interests. To give effect to the legislature's intent, the Trusts cannot also claim a priming wage lien in the same class of property under AS 34.35.435. They are neither employees nor laborers. There are no statutory definitions or judicial constructions of these words which would extend their meaning to encompass the Trusts, and Alaska law mandates that the provisions of a statute which create the lien must be strictly construed.

The Trusts have cited a number of decisions from other state appellate courts[14] and one decision from the United States Supreme Court[15] in support of their position, but all of them are distinguishable. The distinction common to all these cases is that none of them involved a situation like the one present here, where there is a supplemental statute granting a lien in favor of employee benefit trust funds. The state court decisions are inapplicable because they involved liberal interpretations of the parties entitled to claim a mechanic's lien under the respective state lien statutes. Similarly, the *Carter* case was based on liberal construction of the federal Miller Act. This contradicts settled Alaska law which specifies that the creation of a statutory lien must be strictly construed.[16]

---

[14]*Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.*, 633 P.2d 1106 (Hawaii 1981); *Twin City Pipe Trades Serv. Ass'n., Inc. v. Peak Mech., Inc.*, 689 N.W. 2d 549 (Minn. App. 2004); *Connecticut Carpenters Benefit Funds v. Burkhard Hotel Partners II, L.L.C.*, 849 A.2d 922 (Conn. App. 2004); *Omaha Constr. Ind. Pension Plan v. Children's Hospital*, 642 N.W.2d 849 (Neb. App. 2002); *Performance Funding, L.L.C. v. Arizona Pipe Trade Trust Funds*, 49 P.3d 293 (Ariz. App. 2002).

[15]*United States v. Carter*, 353 U.S. 210 (1957).

[16]This distinction, as well as the fact that there was no supplemental lien statute granting a lien in favor of employee benefit trusts, was noted by the court in one of the cases relied on by the Trusts. *See Twin*

In a case more analogous to the instant one, *International Brotherhood of Electrical Workers Local No. 48 v. Oregon Steel Mills, Inc.*,[17] an Oregon appellate court found that trustees of union employee benefit plans lacked standing to assert a mechanic's lien under a subsection in the Oregon mechanic's lien statute which extended the lien to "any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used" in construction.[18] The court found that a more specific subsection in the lien statute, granting a lien to trustees of an employee benefit plan, governed the trusts' right to claim a lien.

Finally, while it is true that a party may claim a lien under more than one statute, the cases dealing with these types of situations involve liens against different classes of property, such as a wage lien against an employer's property and a mechanic's lien against the property that has been improved by the employee's labor.[19] Even when claiming liens under more than one statute, however, the claimant must still fall clearly within the terms of each statute governing the creation of the lien.

I conclude that Wasser & Winters and Key Bank are entitled to partial summary judgment. An order will be entered consistent with this memorandum.

---

*City Pipe Trades Service Ass'n., Inc. v. Peak Mechanical, Inc.*, 689 N.W.2d at 554-555.

[17] 5 P.3d 1122 (Or. App. 2000).

[18] *Id.* at 1123, *citing* ORS 87.010(1).

[19] *Mitchell v. Smith*, 742 P.2d 220, 221 (Alaska 1987) [employee could assert both a wage lien and a mechanic's lien]. *See also* AS 34.34.155, which permits a lien for labor to attach to both a mine and the "dump or mass of mineral, gold, or gold dust, if the facts relative to the labor warrant."

DATED: May 6, 2005.

                    BY THE COURT

                    <u>/s/ Donald MacDonald IV</u>
                    DONALD MacDONALD IV
                    United States Bankruptcy Judge

Serve: M. Mills, Esq.
      P. Gilmore, Esq.
      J. Siemers, Esq.
      M. Parise, Esq.
      K. Blair, Esq.
      E. Sleeper, Esq.
      P. Gingras, Adv. Case Mgr. - served 5/6/05 √ aam

        05/06/05